IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GAIL BROGDON,                          )
                                       )
          Plaintiff,                   )
                                       )
     v.                                )          C.A. No. 13-1600-GMS
                                       )
UNIVERSITY OF DELAWARE, et al.,        )
                                       )
          Defendants.                  )
                                       )

## MEMORANDUM

### I.     INTRODUCTION

The plaintiff Gail Brogdon ("Brogdon") filed this lawsuit against the University of

Delaware (the "University"), and several individual University employees: Thomas DiLorenzo

("DiLorenzo"), Mary Dozier ("Dozier"), Thomas LaPenta ("LaPenta"), Saul D. Hoffman

("Hoffman"), and Tammy Simpson-Turner ("Simpson-Turner") (collectively, "Individual

Defendants"), on September 23, 2013. (D.I. 1.) The Complaint raises a number of claims relating

to Brogdon's employment with the University.    Specifically, Brogdon alleges (1) racial

discrimination in violation of Title VII against the University, (2) retaliation in violation of Title

VII against the University, and (3) violation of her procedural due process rights, pursuant to 42

U.S.C. § 1983, against the Individual Defendants.  (*Id.*)

The University and the Individual Defendants (collectively, the "Defendants") filed a

motion to dismiss for failure to state a claim on October 21, 2013.  (D.I. 4.)  For the reasons stated

below, the court will grant Defendants' motion to dismiss.

## II.    BACKGROUND

Brogdon began her employment with the University in October 2002, working primarily as a Training Coordinator in the Infant Caregiver Project with the department of psychology. (D.I. 1, ¶ 12.) On March 31, 2008, Brogdon was informed that her current employment with the University was to be terminated in the coming months. (*Id.* ¶ 17.) After applying unsuccessfully for several other positions, Brogdon initiated an appeal of her upcoming termination on April 22, 2008. (*Id.* ¶ 22.) She met with Dozier, LaPenta, and Cecily Sawyer-Harmon on May 2, 2008, to discuss her grievance. (*Id.* ¶ 25.) Dozier explained that there was insufficient money in the budget to "continue to employ four (4) trainers and she would have to lay off two (2) trainers." (*Id.*) On May 9, 2008, Brogdon sent an e-mail response criticizing the performance criteria used to select the trainers to be terminated. She argued that performance should be evaluated according to the ratio of completed home visits to total referrals, as opposed to the absolute number of home visits. (*Id.* ¶ 26.) Brogdon argued that she had a better performance (under this calculation) than another junior trainer, Lin Scarpitt. (*Id.*) Brogdon is African American. Ms. Scarpitt is white. Brogdon stated in her response that the department's decision to retain Ms. Scarpitt and terminate Brogdon was "racially discriminatory." (*Id.*)

LaPenta extended Brogdon's current employment for an additional two months, until August 31, 2008. (*Id.* ¶ 27.) Starting in September 2008, Brogdon began a temporary position in the economics department as a Senior Secretary. (*Id.* ¶ 29.) Her salary was reduced by approximately $20,000 annually. (*Id.*) The position was scheduled to last only until October 10, 2008. (*Id.*) While at this position, Brogdon was supervised by Simpson-Turner, the Office Coordinator. (*Id.* ¶ 30.) Simpson-Turner is a white female. Indeed, Brogdon was the only African-American employee in the department. (*Id.*) Simpson-Turner frequently yelled at and verbally

2

abused Brogdon. (*Id.*) Brogdon voiced concerns about Simpson-Turner's conduct to department chair Hoffman. (*Id.*) Nonetheless, Brogdon remained at this position well beyond the original October end date. She received negative performance reviews, and Simpson-Turner's verbal abuse continued. (*Id.* ¶ 40.) On April 7, 2009, Simpson-Turner stated, "I wonder what explanation they had to hire you full-time for this job," and asked Brogdon if she liked the job or "just doesn't care." (*Id.* ¶ 41.) Brogdon believed these comments were made in reference to racial stereotypes. (*Id.*)

Brogdon resigned from her position on April 22, 2009. (*Id.* ¶ 43.) On August 4, 2009, she filed an Equal Employment Opportunity Commission ("EEOC") complaint. (*Id.* ¶ 48.) On December 7, 2009, she filed race and retaliation charges with the Delaware Department of Labor. (*Id.* ¶ 49.) Finally, on September 23, 2013, Brogdon initiated this lawsuit.

Count I of Brogdon's complaint alleges racial discrimination in violation of Title VII. Brogdon contends that the University's decision to terminate her employment, despite having better performance and more seniority than a white co-worker, was racially discriminatory. She also alleges that her negative performance reviews and the hostile work environment while working under Simpson-Turner amounted to racial discrimination. Count II alleges retaliation, also in violation of Title VII. Brogdon alleges that her May 9, 2008, e-mail complaining of racial discrimination constituted protected activity for which she faced adverse employment actions. Finally, Count III alleges that the Individual Defendants failed to provide due process before her termination, in violation of 42 U.S.C. § 1983.

## III.   STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal where the plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In

considering a motion to dismiss, the court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The issue for the court is "not whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). As such, the touchstone of the pleading standard is plausibility. *Bistrian v. Levi*, 696 F.3d 352 365 (3d Cir. 2012). Plaintiffs must provide sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## IV. DISCUSSION

The Defendants argue that each of Brogdon's three Counts should be dismissed for failure to state a claim, pursuant to Rule 12(b)(6). The court examines each of Brogdon's claims in turn.

### A. Racial Discrimination

Brogdon's discrimination claim has two prongs. The first involves the circumstances surrounding her termination from her training position in the department of psychology. Brogdon contends that the department's decision to retain Ms. Scarpitt and terminate Brogdon was the result of racial discrimination. Ms. Scarpitt—a white female—had not been employed as long as Brogdon, and her performance (as calculated using Brogdon's formula) was inferior. The second involves Brogdon's subsequent position while working under Simpson-Turner in the department of economics. Brogdon alleges that the University failed to stop Simpson-Turner's harassment

and gave improper negative performance reviews because of Brogdon's race. The parties refer to this prong as Brogdon's "hostile work environment" claim.

In order to make out a claim for workplace discrimination under Title VII, the plaintiff bears the burden of establishing a "prima facie case of discrimination by showing that he/she (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) the adverse employment action was made under circumstances that give rise to an inference of unlawful discrimination." *Rodriguez v. Nat'l R.R. Passenger Corp.*, 532 F. App'x 152, 153 (3d Cir. 2013) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Concerning Brogdon's termination and demotion from her position in the department of psychology, the court finds that Brogdon has failed to allege sufficient facts giving rise to an inference of unlawful discrimination. *See id.* As discussed above, Brogdon bases her claim on the fact that Ms. Scarpitt was retained and Brogdon was not. Brogdon argues that she was more senior and had better performance than Ms. Scarpitt. But Brogdon's basis for assessing performance conflicts with the calculus actually employed by the department. Indeed, Brogdon stated in her complaint that in January 2008, Dozier told all of the trainers that the upcoming performance appraisals would be based on "the number of interventions and home visits they completed during the prior year." (D.I. 1, ¶ 14.) Brogdon fails to make any justification for why a ratio of home visits to referrals would be used, rather than looking at absolute numbers. Thus, the court sees no reason why performance would be evaluated according to Brogdon's arbitrary ratio method. And a simple comparison of Ms. Scarpitt's numbers (23 visits) and Brogdon's numbers (19 visits) shows Ms. Scarpitt to have the superior performance. (*Id.* ¶ 26.) In light of these facts, the court is unable to draw a plausible inference of discrimination solely on the grounds

that Ms. Scarpitt was white and her tenure with the University was junior to Brogdon's. *See Iqbal*, 556 U.S. at 683 (requiring the plaintiff "to allege more by way of factual content to nudge his claim of purposeful discrimination across the line from conceivable to plausible" (internal quotations marks and alterations omitted)). Subjective beliefs, unsupported by factual allegations, cannot give rise to an inference of discrimination. *See Rodriguez*, 532 F. App'x at 153 ("A plaintiff's subjective belief that race played a role in an employment decision is not sufficient to establish an inference of discrimination.")

Brogdon's claim for discrimination based on a hostile work environment is similarly lacking. "To establish a Title VII claim of discrimination based on a hostile work environment, plaintiff must prove 'the existence of a hostile or abusive working environment which is severe enough to affect the psychological stability of a minority employee.'" *Davis v. Nat'l R.R. Passenger Corp.*, 733 F. Supp. 2d 474, 486–87 (D. Del. 2010) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1485 (3d Cir. 1990)). A *prima facie* case requires allegations that "(1) [the plaintiff] suffered intentional discrimination because of [her] race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected [her]; (4) the discrimination would detrimentally affect a reasonable person of the same [race] in that position; and (5) the existence of respondeat superior liability." *Livingston v. Borough of Edgewood*, 430 F. App'x 172, 177 (3d Cir. 2011) (citing *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009)). Importantly, however, "Title VII does not establish a general civility code for the American workplace." *Davis v. Nat'l R.R. Passenger Corp.*, 733 F. Supp. 2d at 486.

Brogdon provides sufficient factual allegations for each of these elements except the first: that the alleged discrimination was *because* of her race. Brogdon contends that the University failed to address Simpson-Turner's verbal abuse and that she unfairly received negative

performance reviews. But these allegations alone do not support a plausible inference of discrimination because of race. "Allegations in a complaint 'that cannot be reasonably construed as invoking any racial feeling do not support Title VII liability.'" *Harper v. Tyco Elecs. Corp.*, 804 F. Supp. 2d 159, 163 (D. Del. 2011) (quoting *Davis v. City of Newark*, 285 F. App'x 899, 901– 02 (3d Cir. 2008)). Being called names, receiving negative reviews, and generally feeling ostracized, without more, do not amount to race-related discrimination. *See id.* (citing *Jackson v. Locke*, No. 08:10-CV-705-AW, 2011 WL 1231301, at *7–8 (D. Md. Mar. 29, 2011). Brogdon's only support for her position that her treatment was related to race was that she was the only African American in the department of economics and that certain comments made by Simpson-Turner seemed to be in reference to racial stereotypes. Even viewing these allegations in a light most favorable to Brogdon, the court finds that she has not stated a plausible claim for race discrimination. As already stated, unsupported subjective feelings of race-based bias do not establish an inference of discrimination. *Rodriguez*, 532 F. App'x at 153. Brogdon's alleged treatment at the hands of Simpson-Turner and the University's handling of it may have been unprofessional, unfair, or just plain rude, but Title VII is, as noted, not a "general civility code for the American workplace." *Davis*, 733 F. Supp. 2d at 486. Brogdon has not provided factual allegations sufficient to create a plausible inference of racial discrimination, in violation of Title VII. Count I is dismissed.

## B. Retaliation

Brogdon contends that she engaged in protected activity when, on May 9, 2008, she sent an e-mail explaining that she believed her termination was racially discriminatory. As a result, Brogdon alleges that she faced retaliation from the University, through the following actions:

    a. Selected Plaintiff for a lay off in March 2008;

7

b. Demoted Plaintiff to a position with a pay cut in the amount of $20,000;

c. Subjected Plaintiff to constant harassment from Defendant Simpson-Turner, and the harassment continued despite Plaintiff's attempts to remedy the issue by contacting her Supervisors;

d. Terminated Plaintiff on April 23, 2009 with no reason given for the termination, Plaintiff alleges the termination was in retaliation for Plaintiff alleging race discrimination to Defendant University in 2008.

(D.I. 1, ¶ 59.)

In order to state a retaliation claim under Title VII, the plaintiff must show: "(1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 286 (3d Cir. 2001). The court immediately notices problems with two of Brogdon's allegations. The first allegation—that Brogdon was selected for a layoff—cannot be evidence of retaliation because it predates the alleged protected activity. Indeed, Brogdon's grievance was a direct result of her being selected for termination. In addition, the last allegation—that Brogdon was terminated on April 23, 2009, because of her protected activity—conflicts with her allegations in the complaint that she resigned from her position on April 22, 2009, "due to continued harassment." (D.I. 1, ¶ 43.) Although there appears to have been some confusion as to the effective date of her resignation and the terminology of "resignation" versus "termination," Brogdon plainly admits that she resigned prior to any adverse termination action taken by the University. Thus, Brogdon's decision to leave the University's employment also cannot constitute retaliation.[1]

---

[1] Brogdon's contention that she was "constructively terminated" while employed in the department of economics can be addressed in the context of her third allegation: that the continued harassment was itself retaliation.

As for the remaining two allegations, the court finds that they also fail to support an inference of retaliation. Brogdon's second allegation is that her demotion to a position with lower pay was retaliation. After examining the timeline of facts alleged by Brogdon, however, the court is unable to see how Brogdon's reassignment could amount to retaliation. After Brogdon complained that her termination from the department of psychology would be racially discriminatory, the University allowed Brogdon to remain at her position for two months longer than originally contemplated, and then a new position was found for her (albeit one that paid $20,000 less). (*Id.* ¶¶ 27, 29.) These actions were not adverse but, rather, were *favorable* employment actions taken in response to Brogdon's grievance. Brogdon was already facing termination prior to her complaint. Although Brogdon contends that she was entitled to remain at her trainer position in the department of psychology, she cannot maintain a retaliation claim on this ground because she ultimately was better off than she had been before making her complaint.

Finally, Brogdon's third allegation is that she faced harassment at her new position and that the University failed to stop it as retaliation for her grievance. This "retaliatory hostile work environment" claim also fails because Brogdon cannot allege any definitive adverse employment action taken against her. *See Harley v. U.S. Sec'y of Treasury*, 444 F. App'x 594, 595–96 (3d Cir. 2011). Although she alleges that she faced frequent—even pervasive—harassment at the hands of Simpson-Turner, Brogdon does not allege that her pay or benefits were reduced, that she was suspended or terminated, or that any change in her employment conditions resulted. *See Witcher v. Sodexho, Inc.*, 247 F. App'x 328, 331 (3d Cir. 2007). The court accepts Brogdon's allegations that Simpson-Turner's verbal abuse was humiliating and caused "mental anguish and emotional pain," but these allegations do not themselves constitute adverse employment actions. *See id.* ("While appellant may have been upset by these comments or even driven into depression, as he

alleges, isolated comments are legally insufficient to constitute an adverse employment action." (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993))). The alleged harassment and the University's alleged failure to remedy the situation does not rise to level of "extremely serious" conduct, actionable under Title VII. *See Faragher*, 524 U.S. at 788 ("[The] standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.' Properly applied, they will filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.' We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment . . . ." (internal citations omitted)).

Brogdon has failed to allege facts sufficient to give rise to a plausible inference of Title VII retaliation. Count II of the complaint is dismissed.

## C. **Procedural Due Process**

Finally, Brogdon alleges that the Individual Defendants denied her due process rights by failing to follow termination procedures. She contends that she had a protected property interest in her continued employment and therefore was entitled to procedural due process before the University could terminate her employment. She alleges due process was denied because of the Individual Defendants':

  a. failure to provide consistent reasons for Plaintiff's termination, from which Plaintiff could provide a defense;
  b. failure to allow Plaintiff to have legal representation at each stage of the termination proceedings;
  c. failure to provide a panel of neutral decision makers who could provide an unbiased determination as to whether there was just cause for Plaintiff's termination;
  d. failure to [provide] a fair and full opportunity for an evidentiary hearing before neutral decision makers wherein Plaintiff could

10

> present documentary and testimonial evidence in support of her position.

(D.I. 1, ¶ 64.)

Consistent with the due process clause of the Fourteenth Amendment, "a deprivation of life, liberty, or property [must] "be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). In the employment context, "[t]his principle requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Id.*

Thus, the court must first address whether Brogdon had a constitutionally protected property interest in her employment or if she was merely employed "at-will." Brogdon asserts matter-of-factly she had a reasonable expectation of continued employment and therefore had a cognizable property interest. (D.I. 5 at 10 ("Given that she worked at the University of Delaware in a very successful matter [sic] for over 5.5 years, there is no question that Plaintiff did have a reasonable expectation of continued employment.").) But the tenure of employment is not the test. Indeed, most long-time employees may expect to retain their positions indefinitely, but they nonetheless would be categorized as at-will employees. *See Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, No. 06-740(GMS), 2008 WL 399660 (D. Del. Feb. 14, 2008) ("Delaware law creates a 'heavy presumption that a contract for employment, unless otherwise stated, is at-will in nature with duration indefinite.'" (quoting *Bailey v. Wilmington*, 766 A.2d 477, 480 (Del. 2001))). The "reasonableness" of an employee's expectation stems from whether the employment relationship is governed by some statute, regulation, government policy, or "mutually explicit understanding between [the] government employer and [the] employee." *O'Donnell v. Simon*, 362 F. App'x 300, 304 (3d Cir. 2010) (quoting *Carter v. Phila.*, 989 F.2d 117, 120 (3d Cir. 1993)). Aside from her

11

nearly six-year term with the University and comments from Dozier that Brogdon's job was "not in jeopardy,"[2] Brogdon has failed to allege anything other than a "unilateral expectation of continued employment." *See id.* at 303–04 (quoting *Hill v. Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006). Without a protected property interest, Brogdon cannot state a claim for violation of due process. *See Thomas v. Town of Hammonton*, 351 F.3d 108 (3d Cir. 2003) ("The fact that [plaintiff] was an at-will employee is fatal to this claim . . . .").

Even assuming Brogdon possessed a constitutionally protected interest in her continued employment, the court is unable to see how the Individual Defendants deprived her of this interest without due process. Not only did Brogdon resign from her position, but she also failed to request any procedural protections, *e.g.*, submitting a grievance as she had done previously. *See Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants."). The alleged facts in the complaint concede that Brogdon resigned her position in the department of economics. (D.I. 1, ¶ 43.) Although Brogdon asserts her resignation was not truly voluntary, how could the Individual Defendants have offered her a termination hearing after her resignation? It would seem strange to construct barriers to an employee's apparent attempt to leave her position. The court does not consider the Individual Defendants' failure to follow alleged termination procedures a violation of due process when Brogdon resigned and did not request such procedures. Therefore, Brogdon has failed to state a claim for violation of due process. Count III is dismissed.

---

[2] In her complaint, Brogdon asserts that Dozier made two comments on separate occasions that Brogdon would not be fired after a family emergency took her away from work. On February 8, 2008: "Be where your family needs you to be. Your job is not in jeopardy." (D.I. 1, ¶ 15.) On March 17, 2008: "Gail, Listen, we'll work this out and you'll be able to keep the job. I hear in your voice just how much you want to stay on, and we'll figure out how to make it happen." (*Id.* ¶ 16.) It is the court's view that such assurances were made to comfort Brogdon and did not amount to a "mutually explicit understanding" that she was something other than an at-will employee. *See O'Donnell*, 362 F. App'x at 304.

## V.      CONCLUSION

For the foregoing reasons the court will grant the Defendants' motion to dismiss all counts

against the University and the Individual Defendants.  (D.I. 4.)

Dated: January _13_, 2015

UNITED STATES DISTRICT COURT